IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| Tiare Technology, Inc., | § | |
| *Plaintiff*, | § | |
| v. | § | Case No. 2:22-cv-00490-JRG-RSP |
| Dine Brands Global, Inc., | § | LEAD CASE |
| *Defendant*. | § | |

## REPORT AND RECOMMENDATION

Before the Court is Defendants Applebee's Restaurants LLC and Dine Brands Global, Inc.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) and 35 U.S.C. §101. (Dkt. No. 30.) For the reasons that follow, the Court **RECOMMENDS** that the motion be **DENIED**.

### I.     APPLICABLE LAW

Section 101 of the Patent Act defines what is eligible for patent protection: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101.

The Supreme Court has held that there are three specific exceptions to patent eligibility under § 101: laws of nature, natural phenomena, and abstract ideas. *Bilski v. Kappos*, 561 U.S. 593, 601 (2010). In *Mayo*, the Supreme Court set out a two-step test for "distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014) (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1296–97 (2012)). Subject matter eligibility under § 101 serves as an important check on the scope of the

patent monopoly by preventing a patentee from capturing a "building block[] of human ingenuity," "a method of organizing human activity," a "fundamental truth," an "idea of itself," "an original cause," "an algorithm," or a similar foundational concept. *Alice*, 134 S. Ct. at 2354–57 ("the concern that drives this exclusionary principle is one of pre-emption"). The doctrine of subject matter eligibility exists to prevent patent law from "inhibit[ing] further discovery by improperly tying up the future use of these building blocks of human ingenuity." *Id.* at 2354. Yet "we tread carefully in construing this exclusionary principle lest it swallow all of patent law." *Id.*

The first step of *Mayo* requires a court to determine if the claims are directed to a law of nature, natural phenomenon, or abstract idea. *Alice*, 134 S. Ct. at 2355. "If not, the claims pass muster under § 101." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714 (Fed. Cir. 2014). In making this determination, the court looks at what the claims cover. *Ultramercial*, 772 F.3d at 714 ("We first examine the claims because claims are the definition of what a patent is intended to cover."); *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015) ("At step one of the *Alice* framework, it is often useful to determine the breadth of the claims in order to determine whether the claims extend to cover a 'fundamental … practice long prevalent in our system ….'") (quoting *Alice*, 134 S. Ct. at 2356).

"The abstract idea exception prevents patenting a result where 'it matters not by what process or machinery the result is accomplished.'" *McRO, Inc. v. Bandai Namco Games America, Inc.*, App. No. 2015-1080, slip op. at 19, 2016 U.S. App. LEXIS 16703 (Fed. Cir. Sept. 13, 2016). For example, in *Bilski*, the Supreme Court rejected as a patent-ineligible "Claims 1 and 4 in petitioners' application" because the claims simply "explain[ed] the basic concept of hedging, or protecting against risk." *Bilski*, 561 U.S. at 611; *see also BASCOM Global Internet Servs. v. AT&T Mobility LLC*, 2016 U.S. App. LEXIS 11687 at *26–27 (Fed. Cir. June 27, 2016) ("The claims in

*Intellectual Ventures I* preempted all use of the claimed abstract idea on 'the Internet, on a generic computer.' The claims in *Content Extraction* preempted all use of the claimed abstract idea on well-known generic scanning devices and data processing technology. The claims in *Ultramercial* preempted all use of the claimed abstract idea on the Internet. And the claims in *Accenture* preempted all use of the claimed abstract idea on generic computer components performing conventional activities.") (citations omitted). However, when performing this step, the Court "cannot simply ask whether the claims *involve* a patent-ineligible concept, because essentially every routinely patent-eligible claim involving physical products and actions *involves* a law of nature and/or natural phenomenon—after all, they take place in the physical world." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. May 12, 2016).

    A court applies the second step of *Mayo* only if it finds in the first step that the claims are directed to a law of nature, natural phenomenon, or abstract idea. *Alice*, 134 S. Ct. at 2355. The second step requires the court to determine if the elements of the claim individually, or as an ordered combination, "transform the nature of the claim" into a patent-eligible application. *Alice*, 134 S. Ct. at 2355. In determining if the claim is transformed, "[t]he cases most directly on point are *Diehr* and *Flook*, two cases in which the [Supreme] Court reached opposite conclusions about the patent eligibility of processes that embodied the equivalent of natural laws." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1298 (2012); *see also Alice*, 134 S. Ct. at 2355 ("We have described step two of this analysis as a search for an 'inventive concept.'").

    In *Diehr*, the Court "found [that] the overall process [was] patent eligible because of the way the additional steps of the process integrated the equation into the process as a whole." *Mayo*, 132 S. Ct. at 1298 (citing *Diamond v. Diehr*, 450 U.S. 175, 187 (1981)); *see also Mayo*, 132 S. Ct.

at 1299 ("It nowhere suggested that all these steps, or at least the combination of those steps, were in context obvious, already in use, or purely conventional."). In *Flook*, the Court found that a process was patent-ineligible because the additional steps of the process amounted to nothing more than "insignificant post-solution activity." *Diehr*, 450 U.S. at 191–92 (citing *Parker v. Flook*, 437 U.S. 584 (1978)).

A claim may become patent-eligible when the "claimed process include[s] not only a law of nature but also several unconventional steps … that confine[] the claims to a particular, useful application of the principle." *Mayo*, 132 S. Ct. at 1300; *see also DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014) ("In particular, the '399 patent's claims address the problem of retaining website visitors that, if adhering to the routine, conventional functioning of Internet hyperlink protocol, would be instantly transported away from a host's website after 'clicking' on an advertisement and activating a hyperlink."); *BASCOM Global Internet Servs. v. AT&T Mobility LLC*, 2016 U.S. App. LEXIS 11687 at *15 (Fed. Cir. June 27, 2016) ("some inventions' basic thrust might more easily be understood as directed to an abstract idea, but under step two of the Alice analysis, it might become clear that the specific improvements in the recited computer technology go beyond 'well-understood, routine, conventional activit[ies]' and render the invention patent-eligible"); *but see Enfish*, 822 F.3d at 1335 ("We do not read Alice to broadly hold that all improvements in computer-related technology are inherently abstract and, therefore, must be considered at step two."). A claim, however, remains patent-ineligible if it describes only "'[p]ost-solution activity' that is purely 'conventional or obvious.'" *Mayo*, 132 S. Ct. at 1299.

A party may move to dismiss an action when the complaint fails "to state a claim upon which relief can be granted . . . ." FED. R. CIV. P. 12(b)(6). A complaint states a sufficient claim if

it gives the defendant "fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipsis in original) (citations omitted).

When considering a Rule 12 motion to dismiss, a court accepts "all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiff." *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 219 (5th Cir. 2012) (citation omitted). The court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citation omitted). The court must then decide whether those facts "state a claim that is plausible on its face." *Bowlby*, 681 F.3d at 219. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679. "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Bell Atl.*, 550 U.S. at 556).

## II.     ANALYSIS

The specification of the '729 Patent describes the invention as an improvement over existing kiosks and staffed point of sale (POS) computer systems by providing an improved network architecture. 1:25-3:16. Claim 1 reads:

> A method of using a wireless patron unit within a venue and within a vicinity of the venue, the method comprising:
> [(a)] providing at least one patron with a wireless patron unit by either permitting the at least one patron to temporarily use a venue-owned wireless patron

> unit that includes at least one venue specific application program, or by providing at least one venue specific application program to the at least one patron for downloading into a patron owned wireless communication device that can be used during the at least one patron's visit to the venue;
> [(b)] connecting the wireless patron unit to a server enabling communication between the wireless patron unit and the server;
> [(c)] entering a patron order for at least one item or service provided by the venue into the wireless patron unit;
> [(d)] determining a current location of the wireless patron unit;
> [(e)] updating a status of the patron order, and the current location of the wireless patron unit when the patron moves to a different location, on the wireless patron unit; and
> [(f)] displaying the patron order on a display of the wireless patron unit.

25:20-40 (limitation labels added for analysis). The method requires: (a) providing either a venue-specific application for download on a wireless patron unit or a venue-owned unit with the application, (b) connecting the wireless patron unit to a server, (c) entering an order for a good or service offered by the venue into the wireless patron unit, (d) determining the current location of the wireless patron unit, (e) updating the status of the order and updating the current location of the wireless patron unit when the patron moves, and (f) displaying the order on the wireless patron unit. The specification goes into great detail in describing the architecture of the portable patron unit, the server, and associated interfaces.

The '414 patent issued from a continuation application claiming priority to the same parent as the '792 patent and shares a common specification. Claim 8 of the '414 patent reads:

> A computer-implemented method executed by one or more processors, the method comprising:
> [(a)] providing, over a wireless communications channel and by the one or more processors, a venue-specific application to a mobile computing device;
> [(b)] communicating, by the one or more processors, with the mobile computing device over the wireless communication channel to authenticate, based on a security protocol, a user of the venue-specific application on the mobile computing device;
> [(c)] receiving, by the one or more processors, location information from the mobile computing device;
> [(d)] determining, by the one or more processors, a location of the mobile computing device at a first time based on the location information;
> [(e)] mapping, by the one or more processors, the location to a region that is

>   associated with a venue;
> [(f)] receiving, from the mobile computing device, order information for the venue that indicates a user selection of an order option from the venue-specific application;
> [(g)] receiving, by the one or more processors, updated location information from the mobile computing device; and
> [(h)] determining, by the one or more processors, an updated location of the mobile computing device at a second time based on the updated location information.

26:38-62 (limitation labels added for analysis). The method requires: (a) providing a venue-specific application to a mobile computing device, (b) communicating with the mobile device to authenticate a user of the device based on a security protocol, (c) receiving location data from the mobile device, (d) determining a first location of the device, (e) mapping the location of the device within a region of the venue, (f) receiving order information of a selection by a user, (g) receiving updated location information, and (h) determining an updated location.

The '224 patent issued from a continuation application claiming priority to the same parent as the '792 patent and shares a common specification. Claim 10 of the '224 patent reads:

> A system for locating electronic devices, the system comprising one or more processors and one or more data stores coupled to the one or more processors having instructions stored thereon which, when executed by the one or more processors, causes the one or more processors to perform operations comprising:
> [(a)] providing, over one or more wireless channels, a venue-specific application to each of a plurality of mobile electronic devices;
> [(b)] receiving, from each of the plurality of mobile electronic devices, first location information through the venue specific application of each respective mobile electronic device;
> [(c)] determining first locations of each of the plurality of mobile electronic devices based on the first location information;
> [(d)] receiving, over the one or more wireless channels, second location information from each of the mobile electronic devices;
> [(e)] determining updated locations of each of the mobile electronic devices based on the second location information;
> [(f)] receiving, from a particular one of the mobile electronic devices, order information for a venue associated with the venue-specific application; and
> [(g)] in response to receiving the order information, sending, to a computing system associated with the venue, for display in a graphical user interface, data indicating the updated location of the particular one of the plurality of mobile electronic devices.

27:11-40 (limitation labels added for analysis). The system requires: (a) wirelessly providing a venue-specific application to a plurality of mobile computing devices, (b) receiving first location data from each device through the venue-specific application, (c) determining the first locations of each device, (d) wirelessly receiving second location data from each device, (e) determining updated locations of each device from the second location data, (f) receiving order information for an associated venue from one device, and (g) in response to receiving order information, sending data to the venue's computing system for the graphical display of the updated location of the ordering device.

### a. Mayo Step 1

Defendants allege that "all of the representative claims are directed toward the abstract idea of communicating with and location tracking a patron in accordance with a venue specific scheme." (Mot. at 7.) Defendants rely on an auction house analogy to demonstrate this is an abstract idea. (*Id*.) Defendants argue the claims are analogous to tracking auction bids and the patron submitting said bid by observing the patron's placard. (*Id*. at 8-9.) Defendants further argue the auctioneer may track the location of the patron by marking their location on a seating chart. (*Id*. at 10-11.) Defendants argue that because the claims could be performed by an auctioneer, they are directed to an abstract idea. (*Id*.)

Defendants further argue these claims are analogous to those in *Wireless Media Innocations LLC v. Maher Terminals, LLC* and *MacroPoint, LLC v. FourKites, Inc.* In *Wireless Media*, the court found claims directed to "monitoring locations, movement, and load status of shipping containers within a container-receiving yard, and storing, reporting, and communicating this information" were abstract. 100 F. Supp. 3d 405, 413 (D.N.J. Apr. 20, 2015). In *MarcoPoint*, the court found claims directed to "tracking freight, including monitoring, locating, and

communicating regarding the location of the freight" were abstract. 2015 U.S. Dist. LEXIS 151045, at *8 (N.D. Ohio Nov. 5, 2015). That court further held that "[e]ven if some steps in the claims 'were not previously employed in this art is not enough—standing alone—to confer patent eligibility upon the claims at issue." *Id*.

The Court is not convinced by the auction house analogy. Previously, this Court found the argument that claims can be performed by a patron placing an order with a concierge, tracking the patron, and locating an ordering patron with numbered flag did not demonstrate the claims were abstract. *See Tiare Technology, Inc. v Whataburguer Restaurants, LLC*, 2:22-v-0182 Dkt. Nos. 77 at 11. It seems all Defendants have changed from what was previously presented is the inclusion of a seating chart to track location. However, this change is unavailing. Again, the utility provided by the patents in suit eliminates the need for in-person ordering, still required by the auction analogy, and tracks the patron's location as the patron moves around the venue, rather than merely tracking changed seats as in the auction analogy. Likewise, Defendants' identification of cases finding claims directed to certain location tracking as analogous to those in this case are not persuasive. The claims at issue here are directed to more than location tracking and Defendants have not shown any further comparability to the claims in the cited cases.

### b.  Mayo Step 2

For avoidance of any doubt, and because the Court previously found an argument not raised by Defendants made Step 1 a close call, the Court further resolves Step 2.

Defendants argue that the asserted claims lack an inventive concept because they are directed to abstract concepts achieved by generic and conventional devices without something significantly more to transform the claims into eligible concepts. (Mot. at 22-23.) Tiare, citing the Court's prior order on this issue, argues "[s]imply because a claim recites conventional devices

does not automatically lead to the conclusion that the conventional devices cannot be used in an unconventional way." (Opp. at 5.) In particular, Tiare points to the prosecution history where it overcame a similar 101 rejection arguing "the claimed technology 'utilizes what was at the turn of the century an unconventional use of location tracking sensors integrated into mobile computing devices to determine the location of the mobile computing devices based on electronic signals (e.g., GPS, WiFi, Bluetooth, and/or cellular data) and convey location information to a server system over wireless computer networks." (*Id*. at 1.)

Defendants contend they have overcome Tiare's prosecution history argument by distinguishing *DDR Holdings, LLC v. Hotels.com, L.P.*. (Reply at 7.) Defendants argue the Federal Circuit in *Intellectual Ventures I LLC v. Capital One Bank* limited the scope of *DDR Holdings* stating "the claims in that case were only eligible because they '(1) did not foreclose other ways of solving the problem, and (2) recited a specific series of steps that resulted in a departure from the routine and conventional sequence of events after the click of a hyperlink advertisement.'" (Mot at 21 (citing *Intell. Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1371 (Fed. Cir. 2015).)

Defendants have not fully met Tiare's argument that the patents in suit achieve an unconventional result. While *Capital One Bank* distinguishes *DDR Holdings*, the Court does not find that Defendants can similarly navigate Tiare's argument with only attorney argument. While the Court agrees the prosecution history does not decide this issue, the Court finds that it cannot disregard the argument raised in light of the prosecution history without evidence. Given the limitations on the Court's ability to review evidence outside of the complaint at this stage, and that

defendants have not presented evidence to rebut Tiare's claim that the patents in suit achieve an unconventional result, the Court finds the motion must be denied.[1]

### III. CONCLUSION

For the reasons discussed above, it is **RECOMMENDED** that the motion to dismiss be **DENIED** at Step 1 of the Mayo/Alice analysis.

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report within 14 days bars that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); see *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*). Any objection to the Report and Recommendation must be filed in ECF under the event "Objection to Report and Recommendations [cv, respoth]" or it may not be considered by the District Judge.

**SIGNED this 11th day of January, 2024.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

---

[1] As the Court finds that the Defendants have not shown the alleged representative claims are invalid under §101, the Court does not address if Defendants have sufficiently shown the alleged representative claims are indeed representative.